UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEIDI FIORENTINO,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>PHILIDELPHIA INDEMNITY INSURANCE COMPANY,<br><br>　　　　　　Defendant. | Case No. 1:24-CV-01023-KES-SAB<br><br>ORDER GRANTING MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND<br><br>(Doc. 4) |

Defendant Philadelphia Indemnity Insurance Company ("PIIC") moves to dismiss all claims in plaintiff Heidi Fiorentino's complaint. Doc. 4. Fiorentino filed an opposition and PIIC replied. Docs. 11, 13. This matter is suitable for resolution without a hearing pursuant to Local Rule 230(g). For the reasons set forth below, the motion to dismiss is granted with partial leave to amend.

**I. BACKGROUND AND FACTS**

Fiorentino was an instructor working for Bellagio Road, LLC ("Bellagio"), she was let go, apparently during the COVID-19 pandemic, and she was not re-hired following the pandemic. *See* Doc. 1-2 at ¶¶ 7–8. Fiorentino was approximately 55 years old. *Id.* ¶ 7. Samantha Ellis, age 25 and previously a substitute teacher at Bellagio, was re-hired and took over the classes

previously taught by Fiorentino and three other employees aged 55 and over. *Id.* at ¶ 7. These allegations concerning Fiorentino and the three other employees were also included in a separate complaint filed by Lucy Wells against Bellagio in April 2021. *Id.* Wells' complaint alleged claims by Wells of disability discrimination, disability harassment, age discrimination, and age harassment against Bellagio. *Id.* The *Wells* complaint also alleged that "almost everyone in [Wells'] age group" was fired and describes "the terminations of almost every employee over the age of 50." Doc. 11-2 at 9.[1] However, at the time Wells' complaint was filed, Bellagio "did not anticipate any claim being made by" Fiorentino, and Fiorentino made no claim at that time. *Id.* at ¶ 8.

Bellagio had a "Private Company Protection Plus Liability policy" issued by PIIC ("Policy"). Doc. 1-2 at ¶ 5. Fiorentino's complaint alleges that at "all times material hereto said policy was in full force and effect." *Id.* The Policy provided that PIIC "shall pay on behalf of the Insured, Loss from Claims made against the Insured during the Policy Period (or, if applicable, the Extended Reporting Period), and reported to the Underwriter pursuant to the terms of this Policy, for an Employment Practice Act." Doc. 4-3 at 50 (emphasis in original removed). The Policy's notice and claim reporting conditions, as modified by a subsequent policy endorsement, provide:

> A. In the event that a Claim is made against the Insured, the Insured shall, as a condition precedent to the obligations of the Underwriter under this Policy, give written notice to the Underwriter as soon as practicable after any of the directors, officers, governors, trustees, management committee members, or members of the Board of Members first become aware of such Claim, but, not later than 90 days after the expiration date of this Policy, Extension Period, or Run-Off Policy, if applicable.
>
> B. If during this Policy Period the CEO, Chairperson of the Board, CFO, or General Counsel first becomes aware of any circumstances which may subsequently give rise to a Claim being made against any Insured for a specific alleged Wrongful Act, and as soon as practicable thereafter, but before the expiration or cancellation of this Policy, gives written notice to the Underwriter of the circumstances and the reasons for anticipating such a Claim, with full particulars as to the Wrongful Act, dates and persons involved, then any Claim which is subsequently made against the Insured

---

[1] The parties' briefing references several documents outside of the complaint. As discussed below, certain of these documents are appropriately considered on this motion to dismiss without converting the motion into one for summary judgment. *See* § III.1; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

>   arising out of such Wrongful Act will be considered made during this Policy Period.
>
>   C. All Loss arising out of the same Wrongful Act and all Interrelated Wrongful Acts shall be deemed one Loss on account of a [sic] one Claim. Such Claim shall be deemed to be first made when the earliest of such Claims was first made or first deemed made pursuant to Clause B. hereinabove.

Doc. 4-3 at 43, 62.[2]

On March 29, 2022, Fiorentino filed an action against Bellagio in the Fresno County Superior Court, alleging claims of discrimination, harassment, violations of the California Labor Code, wrongful termination, failure to prevent discrimination and retaliation in violation of FEHA, and intentional infliction of emotional distress ("Underlying Action"). Doc. 1-2 at ¶ 9. Bellagio tendered its defense of Fiorentino's complaint to PIIC shortly after being served with the complaint. *Id.* at ¶ 10. On May 25, 2022, PIIC denied Bellagio's tender of defense of the Fiorentino complaint. *Id.* at ¶ 11. Bellagio requested a reconsideration of the decision on June 7, 2022, but on July 19, 2022, PIIC again refused to accept Bellagio's tender of defense of the complaint. *Id.* at ¶¶ 12–13. Fiorentino prevailed at trial against Bellagio and judgment was entered in Fiorentino's favor against Bellagio on November 17, 2023. *Id.* at ¶ 24. Relying on that judgment against Bellagio, Fiorentino now seeks to recover her damages from Bellagio's insurer, PIIC.

**II.  LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light

---

[2] Fiorentino does not contest the applicability of the Policy language as modified by the endorsement. *See* Doc. 11 at 11.

3

1   most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,
2   the court need not assume the truth of legal conclusions cast in the form of factual allegations.
3   *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  While Rule 8(a) does not require detailed factual
4   allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me
5   accusation." *Id.* at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a
6   formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S.
7   544, 555 (2007); *see also id.* at 678 ("Threadbare recitals of the elements of a cause of action,
8   supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to
9   assume that the plaintiff "can prove facts that it has not alleged or that the defendants have
10  violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal.,*
11  *Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).
12      If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to
13  amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).  The "underlying purpose of Rule 15
14  [is] to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v.*
15  *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up).  However, a court has
16  discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of
17  the movant, repeated failure to cure deficiencies by amendment previously allowed, undue
18  prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of
19  amendment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).
20  **III. DISCUSSION**
21      Fiorentino alleges three causes of action against PIIC: (1) breach of the implied covenant
22  of good faith and fair dealing, based on PIIC's failure to pay Fiorentino's judgment against
23  Bellagio according to the Policy; (2) collection of the judgment from PIIC as Bellagio's judgment
24  creditor; and (3) breach of PIIC's duties to Bellagio, brought by Fiorentino as Bellagio's assignee.
25  Doc. 1-2 at ¶¶ 25–40.  Fiorentino asserts that she has standing as a judgment creditor to seek her
26  damages from PIIC, Bellagio's insurer, under California Insurance Code section 11580(b)(2).  *Id.*
27  ¶ 35.
28      PIIC argues that Fiorentino's first two causes of action must be dismissed because

Fiorentino lacks standing as a judgment creditor under section 11580(b)(2), as Fiorentino's judgment against Bellagio was for emotional distress damages and not for damages due to bodily injury.  Doc. 4-1 at 11–12.  Fiorentino asserts that she has standing under section 11580(b)(2) because emotional distress damages may be considered "bodily injury" damages if the emotional distress also manifested through physical symptoms.  Doc. 11 at 19.

As to Fiorentino's third cause of action, PIIC argues that Fiorentino's cause of action as Bellagio's assignee fails because Bellagio failed to timely notify PIIC of the underlying insurance claim as required under the Policy.  Doc. 4-1 at 14.  Fiorentino responds that Bellagio sufficiently notified PIIC of the substance of Fiorentino's claim through the allegations of age discrimination in the *Wells* complaint, which Bellagio timely provided to PIIC.  Doc. 11 at 15.

*1. The Parties' Reliance on Additional Documents Outside the Complaint*

PIIC relies on several documents attached to its motion to dismiss: (1) Bellagio's Policy with PIIC, which covers the policy period of 8/3/2020 to 8/3/2021, (2) a post-trial order filed November 8, 2023, in Fiorentino's underlying California Superior Court case against Bellagio ("Order After Trial"); and (3) the judgment in Fiorentino's underlying state case against Bellagio ("Judgment").  Docs. 4-4, 4-5.

Fiorentino also relies on additional documents attached to her opposition: (1) the complaint filed on April 12, 2021, in *Lucy Wells v. Copper River Country Club, Bellagio Road, LLC, et al.*, Fresno County Superior Court Case No. 21CECG01031 ("*Wells* complaint") and (2) Fiorentino's responses to Bellagio's interrogatories, served on July 5, 2022, in the matter of *Fiorentino v. Bellagio Road, LLC*, Fresno County Superior Court Case No. 22CECG00936 ("Fiorentino Interrogatory").  Docs. 11-1; 11-2; 11-3.

Generally, if a court considers evidence outside the pleadings on a Rule 12(b)(6) motion, the motion is converted into a Rule 56 motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *see also* Fed. R. Civ. Proc. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56").  However, documents that are attached to the complaint, incorporated by reference in the complaint, or

5

subject to judicial notice may be considered without converting the motion into one for summary judgment. *Ritchie*, 342 F.3d at 908.

Bellagio's Policy with PIIC is incorporated by reference in Fiorentino's complaint. *See* Doc. 1-2 at ¶¶ 5–6. The Order After Trial and Fiorentino's Judgment were included as attachments to Fiorentino's complaint, and they are therefore also properly considered on the motion to dismiss. Fiorentino also acknowledges the Order After Trial and Fiorentino's Judgment are part of the complaint and therefore appropriately before the Court. Doc. 11 at 14.

PIIC objects to the admission of the *Wells* complaint as support for Fiorentino's interrelated Wrongful Acts theory of liability, but PIIC does not raise a dispute concerning the authenticity of the document. *See* Doc. 13 at 5. The *Wells* complaint is a public court record whose authenticity the parties do not dispute, and it is suitable for judicial notice. Fed. R. Evid. 201(b); *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). The Court overrules PIIC's objection and takes judicial notice of the fact of the *Wells* complaint and that it asserts certain allegations, but not the truth of any such allegations.

Fiorentino's responses to interrogatories in her underlying action against Bellagio are not attached to or referenced in her complaint in this action. Nor are they records that may be judicially noticed as facts "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see Ritchie*, 342 F.3d at 908. The Fiorentino Interrogatory, Doc 11-3 (Exhibit B), is therefore not considered for purposes of this Rule 12(b)(6) motion.

*2. Standing for claims under Cal. Ins. Code § 11580 (First and Second Causes of Action)*

Fiorentino asserts standing to bring her first and second causes of action under California Insurance Code § 11580(b) (Mandatory Provisions Regarding Insolvency, Bankruptcy, or Death of Insured). Doc. 1-2 at ¶¶ 27, 35. The purpose of section 11580(b) is to avoid "prejudice to a personal injury victim as a result of his insured tortfeasor's insolvency." *Webster v. Superior Court*, 250 Cal. Rptr. 268, 274 (1988). Section 11580 reads in pertinent part:

> A policy insuring against losses set forth in subdivision (a) shall not be issued or delivered to any person in this state unless it contains the provisions set forth in subdivision (b). Such policy, whether or not actually

> containing such provisions, shall be construed as if such provisions were embodied therein.
>
> . . . .
>
> (b) Such policy shall not be thus issued or delivered to any person in this state unless it contains all the following provisions:
>
> (1) A provision that the insolvency or bankruptcy of the insured will not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of such policy.
>
> (2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment.

Cal. Ins. Code § 11580.

To allege a direct cause of action against an insurer under this section, a third party must plead:

> 1) it obtained a judgment for bodily injury, death, or property damage,
>
> 2) the judgment was against a person insured under a policy that insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal,
>
> 3) the liability insurance policy was issued by the defendant insurer,
>
> 4) the policy covers the relief awarded in the judgment,
>
> 5) the policy either contains a clause that authorizes the claimant to bring an action directly against the insurer or the policy was issued or delivered in California and insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal.

*Wright v. Fireman's Fund Ins. Cos.*, 14 Cal. Rptr. 2d 588, 597-98 (Ct. App. 1992).

PIIC argues that Fiorentino is unable to plead the first element, because the judgment Fiorentino received, as reflected in the Order After Trial, was only for "past emotional distress" and "future emotional distress," and therefore the judgment is not for "bodily injury, death, or property damage." Doc. 4 at 12. PIIC relies on *GDF Int'l v. Associated Elec. & Gas Ins. Servs.*, No. C 02-02916 CRB, 2003 WL 926790, at *3-4 (N.D. Cal. Mar. 3, 2003), which found that a plaintiff was unable to bring a direct claim against an insurer pursuant to section 11580 because the plaintiff's underlying judgment was for securities fraud. Doc. 4-1 at 11. As the plaintiff's

7

1 judgment was not "based upon bodily injury, death, or property damage, it [did] not have
2 standing under section 11580."

3 Fiorentino does not dispute that "bodily injury, death, or property damage" is required
4 under section 11580. Doc. 11 at 18. Fiorentino instead argues that emotional distress damages
5 may constitute "bodily injury" when accompanied by physical symptoms, that her emotional
6 distress included physical reactions such as "crying, weight gain, lethargy, lack of energy,
7 tiredness, difficulty in falling asleep, and restless sleep," and that she therefore suffered "bodily
8 injury" for purposes of section 11580. *Id.* at 18–20. Fiorentino's allegation of physical reactions
9 relies entirely on her interrogatory response in her underlying case, and, as addressed above, that
10 response is not part of the record on this motion to dismiss.

11 Fiorentino's argument is also not persuasive. The California Court of Appeal has found
12 the term "bodily injury" as used in liability policies under California law unambiguously to
13 means only "physical injury and its consequences," noting "[i]t does not include emotional
14 distress in the absence of physical injury." *Aim Ins. Co. v. Culcasi*, 280 Cal. Rptr. 766, 772 (Cal.
15 Ct. App. 1991). "'Bodily injury' as commonly understood 'imports harm arising from corporeal
16 contact' and bodily refers to 'an organism of flesh and blood' and is not satisfied by anything
17 short of physical injury." *Chatton v. Nat'l Union Fire Ins. Co.*, 13 Cal. Rptr. 2d 318, 323 (Cal. Ct.
18 App. 1992) (quoting *Allstate Ins. Co. v. Diamant* 518 N.E.2d 1154, 1156 (1988)). In *Chatton*, the
19 California Court of Appeal found emotional distress to be a distinct harm separate from bodily
20 injury. *Id.*

21 In *Mercury Ins. Co. v. Alaya*, 11 Cal. Rptr. 3d 158, 162–63 (Cal. Ct. App. 2004), the
22 California Court of Appeal held that a loss of consortium claim, a form of emotional distress
23 claim, was not a claim for "bodily injury" for purposes of an automobile insurance policy that
24 covered "bodily injury" caused by a motorist. *Id.* at 162. Considering the meaning of "bodily
25 injury" in a neighboring provision of the California Insurance Code, section 11580.1, the *Mercury*
26 *Ins.* court found that "the emotional distress suffered from a loss of consortium can, like any
27 emotional distress, result in some physical symptoms, [but] that possibility does not make a loss
28 of consortium claim a bodily injury claim for purposes of Insurance Code section 11580.1 . . . ."

8

*Id.* at 163.

The state court's Order After Trial confirms that Fiorentino dismissed her claims against Bellagio for harassment and intentional infliction of emotional distress, that Fiorentino was not seeking damages for lost wages or medical expenses, and that "the only issue for the court to determine [was] the amount of emotional distress damages to award" Fiorentino. Doc. 1-3 at 5. Nor did Fiorentino seek or recover any damages for medical treatment due to her emotional distress. *Id.* at 3, 5. Because her judgment against Bellagio was for emotional distress damages only, Fiorentino has not "obtained a judgment for bodily injury, death, or property damage" and therefore cannot plead one of the elements required to establish her standing to sue PIIC under section 11580. *See Wright*, 14 Cal. Rptr. 2d at 597-98.

As Fiorentino cannot establish standing under section 11580 to recover her emotional distress damages from PIIC as a judgment creditor of Bellagio, and she does not identify any other potential basis for standing to pursue such claims, PIIC's motion to dismiss Fiorentino's first and second causes of action is granted, without leave to amend.

*3. Fiorentino's Claim, as Bellagio's Assignee, for Breach of PIIC's Duties to Bellagio*

Fiorentino's third cause of action is for PIIC's breach of its duties to Bellagio, brought by Fiorentino as Bellagio's assignee. Doc. 1-2 at ¶¶ 37–40. The claim is based on PIIC's failure to defend and indemnify Bellagio against Fiorentino's claims. *Id.*

PIIC argues Fiorentino's allegations fail to state a claim because Bellagio did not timely notify PIIC of Fiorentino's underlying insurance claim under the Policy. Doc. 13 at 10. The Policy provides that PIIC "shall pay on behalf of the Insured, Loss from Claims made against the Insured during the Policy Period (or, if applicable, the Extended Reporting Period), and reported to the Underwriter pursuant to the terms of this Policy, for an Employment Practice Act." Doc. 4-3 at 50 (emphasis in original removed). Bellagio was required to report a claim no later than 90 days after the expiration of the Policy and any applicable extension period. Doc. 4-3 at 43. Under the Policy, it is "notice of the claim to the insurer which [is] the event that invoke[s] coverage." *Pac. Emps. Ins. Co. v. Superior Court*, 270 Cal. Rptr. 779, 784 (Ct. App. 1990). Construing the contract to include a claim noticed after the end of the policy period would extend

9

the coverage beyond the agreed terms.  *Id.*  To do so would read into the contract something that was not bargained for by the parties.  *Id.*

Fiorentino does not argue that Bellagio timely notified PIIC of Fiorentino's claim. Doc. 1-2 ¶ 8.  Rather, Fiorentino argues that PIIC was on notice of Fiorentino's claim from the *Wells* complaint, which was timely tendered to PIIC.  *Id.*  Fiorentino argues the *Wells* complaint was sufficient to give notice to PIIC of a wrongful act as to Fiorentino under section B of the Policy's notice and claim reporting conditions.  *Id.*  That section provides:

> B. If during this Policy Period the CEO, Chairperson of the Board, CFO, or General Counsel first becomes aware of any circumstances which may subsequently give rise to a Claim being made against any Insured for a specific alleged Wrongful Act, and as soon as practicable thereafter, but before the expiration or cancellation of this Policy, gives written notice to the Underwriter of the circumstances and the reasons for anticipating such a Claim, with full particulars as to the Wrongful Act, dates and persons involved, then any Claim which is subsequently made against the Insured arising out of such Wrongful Act will be considered made during this Policy Period.

Doc. 4-3 at 43.  This provision required Bellagio to provide "written notice . . . of the circumstances and the reasons for anticipating such a Claim, with full particulars as to the Wrongful Act, [and] dates and persons involved."  *Id.*

Fiorentino's complaint states that, at the time the *Wells* complaint was tendered to PIIC, "BELLAGIO did not anticipate any claim being made by FIORENTINO and FIORENTINO did not actually make a claim during the appliable [PIIC] policy period."  Doc. 1-2 at ¶ 8.  The fact that Bellagio did not anticipate a claim being made by Fiorentino at the time of the *Wells* complaint undermines Fiorentino's argument that, by tendering the *Wells* complaint, Bellagio was also putting PIIC on written notice of Fiorentino's claim, because "the reasons for anticipating" a claim are part of the notice requirements.

However, Fiorentino also argues her claims are covered by section C of the notice and claim reporting provisions, because her claims arise out of the same interrelated wrongful act as those alleged in the *Wells* complaint.  Doc. 11 at 21–22.  Section C provides:

> C. All Loss arising out of the same Wrongful Act and all Interrelated Wrongful Acts shall be deemed one Loss on account of a [sic] one Claim. Such Claim shall be deemed to be first made when the earliest of such

10

>   Claims was first made or first deemed made pursuant to Clause B. hereinabove.

Doc. 4-3 at 62.

The *Wells* complaint contains some allegations concerning Fiorentino, as noted above. It alleges that Fiorentino and three other employees older than 55 "were not rehired after they were furloughed," that Fiorentino and the other employees had been employed for 10 years or more, and that "[m]ost of their classes remained, but were taught by 25-year-old Ellis, who suddenly became a full-time instructor." Doc. 11-2 at 7. The *Wells* complaint further alleges that "almost everyone else in [Wells'] age group" was fired and refers to "the termination of almost every employee over the age of 50." *Id.* at 9.

PIIC argues that the interrelated wrongful acts provision does not save Fiorentino's claim because she still lacks standing to bring a judgment creditor claim under section 11580(b)(2). But that argument fails, as Fiorentino brings her third claim directly under the Policy as Bellagio's assignee, not under California Insurance Code section 11580. *See* Doc. 1-2 at 9. PIIC also argues that Fiorentino's complaint does not allege coverage based on the "interrelated wrongful acts" provision. While the complaint need not raise every possible theory of recovery, it must provide sufficient facts to support a cognizable legal theory for recovery. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

The complaint fails to allege sufficient facts to determine that the *Wells* complaint and Fiorentino's underlying action against Bellagio are sufficiently related to invoke the interrelated wrongful acts clause of the Policy. The *Wells* complaint mentions Fiorentino was replaced with a younger instructor and contains general allegations that Fiorentino and most other employees over 50 were fired, but the age discrimination allegations as to Wells in the *Wells* complaint are much more detailed and may be distinct from Fiorentino's circumstances. *See* Doc. 11-2 at 7. Wells alleges she was ultimately reinstated to her position as an instructor and claims she suffered discrimination during her employment, while Fiorentino's allegation seems to be that Fiorentino was terminated due to her age and never rehired. *Id.* The complaint does not sufficiently allege a "causally connected Wrongful Act or any series of the same, similar or related Wrongful Acts" as

11

those set forth in the *Wells* complaint.  *See* Doc. 4-3 at 56.

Fiorentino's third cause of action is for PIIC's failure to defend and indemnify Bellagio against Fiorentino's claims, but no fiduciary duty exists under the Policy as to a claim that was not timely reported within the required policy period, unless PIIC was previously timely notified of an interrelated wrongful act.  As the complaint does not sufficiently allege that the termination of Fiorentino and the conduct alleged in the *Wells* complaint were interrelated wrongful acts, Fiorentino's third cause of action is dismissed.  As Fiorentino may be able to cure this deficiency in an amended complaint, the dismissal of the third cause of action is with leave to amend.

**IV.  CONCLUSION**

Based on the foregoing, the Court ORDERS:

1. Fiorentino's first and second causes of action are dismissed without leave to amend;
2. Fiorentino's third cause of action is dismissed with leave to amend;
3. Fiorentino may file an amended complaint within 21 days from the entry of this order; and
4. If an amended complaint is filed, PIIC shall thereafter have 21 days to file a responsive pleading.

IT IS SO ORDERED.

Dated:   December 6, 2024

_____
UNITED STATES DISTRICT JUDGE

12